**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

**NO. 19-70010**

———————————————

**UNITED STATES OF AMERICA,**

          **Plaintiff-Appellee,**

**v.**

**LEN DAVIS,**

          **Defendant-Appellant.**

———————————————

**Appeal From The United States District Court
For The Eastern District Of Louisiana**

**Honorable Ivan L.R. Lemelle, District Judge
Criminal Docket No. 94-381, Section "B"**

———————————————

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
<u>MOTION FOR A CERTIFICATE OF APPEALABILITY</u>**

The United States of America, by and through the undersigned Assistant

United States Attorney, respectfully requests that Len Davis's Request for a

Certificate of Appealability (COA) be denied because Davis has not made a

substantial showing of the denial of a constitutional right by demonstrating that

jurists of reason would find it debatable whether the district court was correct in its

assessment of Davis's allegations of constitutional violations when almost all of them have been litigated in the district court, most of them have been heard by this Court, and Davis's allegations of new evidence fall short of satisfying the test for a certificate of appealability.

## PROCEDURAL HISTORY

In 1996, Davis, a former New Orleans Police Officer, was convicted of a civil rights murder and sentenced to death under 18 U.S.C. §§ 241 and 242. ROA.2011-15, 2019-26; *see United States v. Davis*, 629 F. App'x 613, 615 (5th Cir. 2015).[1] On his direct appeal, this Court upheld the convictions but reversed the sentence and remanded for a new penalty trial. *United States v. Causey and Davis,* 185 F.3d 407, 422-23 (5th Cir.1999).[2]

In August 2005, a second jury recommended that Davis be sentenced to death. ROA.5129-41. This Court affirmed Davis's conviction and sentence, *United*

---

[1] Davis was indicted along with Paul Hardy and Damon Causey in a three-count indictment charging federal offenses surrounding the murder of New Orleans resident Kim Groves after she filed a complaint against Davis with NOPD internal affairs alleging police brutality. *United States v. Davis*, 609 F.3d 663, 670 (5th Cir. 2010); *see* ROA.815-19. The Honorable Helen G. Berrigan presided over this matter until she recused herself in December 2015, at which time the matter was reassigned to the Honorable Ivan L.R. Lemelle. *See* ROA.6847.

[2] Although this Court affirmed Davis's conviction on the first two counts, it found insufficient evidence as to the third count, the willful killing to prevent a victim from communicating to law enforcement officers regarding a possible federal crime. ROA.5408, *see Causey,* 185 F.3d at 421-23. The death sentences were vacated because the jury did not make separate recommendations regarding the appropriate penalty for each count of conviction. *Id.* at 423.

*States v. Davis*, 609 F.3d 663 (5th Cir. 2010), and the Supreme Court denied certiorari in 2011. *Davis v. United States*, 562 U.S. 1290 (2011).

Under *Faretta v. California,* 422 U.S. 806 (1975), Davis successfully sought to represent himself several times, including during the second penalty phase proceedings. *See United States v. Davis*, 2001 WL 34712238 (5th Cir. July 17, 2001); *United States v. Davis*, 285 F.3d 378, 379 (5th Cir. 2002). Davis also objected when, in 2012, standby counsel filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255 that included challenges to his death sentence and competency which Davis did not approve. *See* ROA.5498-5889, 6267-6545; *see also Davis*, 629 F. App'x at 616. Standby counsel's § 2255 motion raised 29 issues: 19 of them challenged aspects of Davis's underlying conviction, and these Davis accepted; other issues addressed his death sentence, while the remainder questioned his "competency" or suggested that he was "mentally ill," and Davis objected to consideration of any of these non-guilt-related issues. ROA.6009-21, 6040-42. This Court held that Davis had a statutory right to represent himself that included the right to reject his standby counsel's objectionable arguments. *Davis*, 629 F. App'x at 618.

In aid of Davis's § 2255 motion, the district court granted standby's counsel's requests for discovery, *see* ROA.5956-81, and to interview 1996 and

3

2005 petit jurors. ROA.6612-14, *see* ROA.5984-6004. Davis adopted their guilt-phase arguments. *See* ROA.6009-21, 6040-41.

In June 2017, the district court ordered that Davis file witness and exhibit lists if he wanted an evidentiary hearing and that the government file a corresponding list including defenses and objections, with reasons, weighing against the grant of an evidentiary hearing on the specified pending claims. ROA.6911-12. Following briefing, *see* ROA.7050-7118 (Davis), ROA.7119-33 (government), the district court found an evidentiary hearing was unnecessary and denied Davis's § 2255 petition. ROA.7135-48. The district court also denied a certificate of appealability. ROA.7150.

Davis then filed a motion to alter or amend the district court's judgment denying Davis's § 2255 petition and grant an evidentiary hearing, ROA.7151-87, to which the government objected. ROA.7191-92. On March 13, 2019, the district court dismissed the motion with reasons. ROA.7193-99.

On May 10, 2019, Davis timely noticed his appeal of the district court's denial of relief, including as to both Davis's substantive and procedural claims. ROA.7200-01. On October 31, 2019, Davis filed a Brief on Application for Certificate of Appealability.

4

# LAW AND ARGUMENT

"This court may not consider an appeal from the denial of a 28 U.S.C. § 2255 motion for relief unless either the district court or this court issues a COA." *United States v. Bernard*, 762 F.3d 467, 471 (5th Cir. 2014) (quotation marks and citation omitted). COAs are governed by 28 U.S.C. § 2253(c), which provides:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a proceeding under section 2255.

> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

*Id.* (quoted in *United States v. Smith*, ___F.3d___, 2019 WL 6888490, at *1 (5th Cir. Dec. 18, 2019)); *see Slack v. McDaniel*, 529 U.S. 473, 483 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Bernard*, 762 F.3d at 471 (quotation marks and citation omitted). "While the nature of a capital case is not of itself sufficient to warrant the issuance of a COA, in a death penalty case any doubts as to whether a COA should issue must be resolved in the petitioner's favor." *Id.* (quotation marks and citation

omitted).

Davis has asked this Court to grant a certificate of appealability on four

issues:

> (1)    Whether the district court erred in denying Davis's claim that his attorney during the 1996 guilt phase trial was ineffective.

> (2)    Whether the district court erred in denying Davis's claim of adverse impact from external influences on jury deliberations.

> (3)    Whether the district court erred in denying Davis's *Brady/Giglio* claim.

> (4)    Whether the district court abused its discretion in denying a hearing on any of the claims.

Davis has failed to make the required showing.

**1.    Davis has failed to demonstrate that jurists of reason could disagree with the district court's resolution of his claim that his attorney during the 1996 guilt phase was ineffective.**

An ineffective assistance of counsel claim requires a showing that

"(1) counsel's performance was legally deficient, and (2) the deficiency prejudiced

the defense." *Barnard*, 762 F.3d at 471 (citing *Strickland v. Washington,* 466 U.S.

668, 687 (1984)). "As to the first prong, the proper standard for evaluating

counsel's performance is that of reasonably effective assistance, considering all of

the circumstances existing as of the time of counsel's conduct." *Id.* (citation

omitted). "Counsel's performance is strongly presumed to fall within the wide

range of reasonable professional assistance." *Id.* (citing *Strickland,* 466 U.S. at

690). "To establish prejudice under the second prong of the *Strickland* test, the defendant must show that his attorney's errors were so serious that they rendered the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* (quotation marks and citation omitted). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation marks and citation omitted).[3] In deciding an ineffectiveness claim, the court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of it based solely on a petitioner's failure to meet either prong of the test. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994).

Davis has not demonstrated that jurists of reason could disagree with the district court's denial of relief based on trial counsel's alleged ineffective assistance in the failure to investigate, litigate, or argue at trial that there were weaknesses in the "under color of law" element required for federal jurisdiction under 18 U.S.C. §§ 241-42, based on the proposition that Davis had Kim Groves

---

[3] *See also id* at 471-72 (quotation marks, ellipses, and citation omitted): "Although courts may not indulge *post hoc* rationalization for counsel's decisionmaking that contradicts the available evidence of counsel's actions, . . . neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect. . . . After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland,* however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."

killed based on a personal relationship and not on her Internal Affairs complaint of police brutality. *See* Davis Br. 22-35. As the district court determined, Davis's color of law arguments "have already been adjudicated in two prior proceedings." ROA.7143 (citing *Causey*, 185 F.3d at 413-16; *Davis*, 609 F.3d at 697); *see also* ROA.7198-99. Davis's attempt to recast his "color of law" arguments as ineffective assistance claims are unpersuasive because this Court already has rejected them on the merits, trial counsel is not ineffective in failing to raise meritless arguments, and, as the district court found, these repetitive allegations should not be reexamined under the law of the case doctrine. *See* ROA.7143 (citing *United States v. Williams*, 517 F.3d 801, 806 (5th Cir. 2008); *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006)).

The strength of the government's case also factors into the ineffectiveness equation: The stronger the case against the defendant, the higher the obstacle he must overcome to prove the significance of counsel's purported errors. This Court repeatedly observed that the evidence against Davis presented at trial was "overwhelming." *Davis*, 609 F.3d at 684 ("testimony . . . not sufficient to render the trial unfair, relative to the overwhelming evidence against Davis"); *id.* at 696 ("[Sammie] Williams's denial of any promises could not have affected the jury's judgment, or change the outcome of the trial, in light of the overwhelming evidence against Davis."); *Causey*, 185 F.3d at 418 ("any error . . . does not require

8

reversal due to the overwhelming evidence of Davis's guilt and the negligible prejudicial [e]ffect of the remarks in the context of this case"). Davis's ineffective assistance allegations do not warrant the grant of a COA.

**2.      Davis has failed to demonstrate that jurists of reason could disagree with the district court's resolution of his claim that external influences adversely impacted jury deliberations.**

Davis also has failed to meet his burden to demonstrate that reasonable jurists could disagree concerning his allegations of external influences on the jury, much less that the issue deserves encouragement to proceed further. *See Bernard*, 762 F.3d at 471. As the district court found, Davis failed to demonstrate that any of the jurors was actually or fundamentally incompetent, noting Davis's selective quotes from juror selection transcripts. ROA.7146-47. Davis has not cited any remotely contemporaneous juror complaints to Judge Berrigan about the means of sequestration, which was at Davis's request. *See* ROA.1780-84, 7595. Nor has he cited any authority suggesting constitutional infirmity in the careful supervision of jurors and their families' safety, of which he now complains. *See* Davis Br. 35-38. Accordingly, the government requests that the Court deny a COA on this issue.

**3.      Davis has failed to demonstrate that jurists of reason could disagree with the district court's resolution of his *Brady/Giglio* allegations.**

Finally, Davis has not demonstrated that he is entitled to a COA on his allegations that the government suppressed information in unredacted reports of two interviews with Williams. Davis Br. 40-41. Davis alleges, however, that these

9

redactions go to whether he was acting "under color of law," which he reasserts here.

The government must disclose exculpatory evidence that is "material either to guilt or to punishment." *Brady v. Maryland,* 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). To establish a *Brady* claim, a claimant must show that: (1) the prosecution suppressed evidence, (2) the evidence was favorable, and (3) the evidence was material. *Mahler v. Kaylo,* 537 F.3d 494, 500 (5th Cir. 2008) (citations omitted). In assessing the materiality of suppressed evidence, the Supreme Court has explained that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985). A "reasonable probability" of a different result is only shown when the nondisclosure "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995) (footnote omitted). Davis has not demonstrated that jurists of reason would disagree with the district court's resolution of his *Brady/Giglio* claims. *See* ROA.7142-44; *see also United States v. Fields*, 761 F.3d 443, 476 (5th Cir. 2014), *as revised* (Sept. 2, 2014).

Davis continues to complain that he had Kim Groves murdered for personal reasons and not because she complained to NOPD Internal Affairs about him, but

his current allegations place him in no better position than those this Court has rejected. Among other things, it is established:

> that Petitioner misused and abused his official power to access the police station, police car, and police radio to plan, execute, and cover-up the murder. Petitioner met with the other defendants at the police station and drove them in a police car to point out where the victim frequented. Petitioner said on tape that he and his partner could handle the evidence after the shooting and used police radio to confirm the hit with the police officer at the murder scene.

ROA.7197-98. This is color of law. *See* ROA.7198. Davis's scattered allegations are insufficient to overcome these repeatedly upheld facts.

**4.      Based on the foregoing, Davis has not demonstrated that reasonable jurists would disagree on his request for an evidentiary hearing.**

The district court was able to resolve the merits of the § 2255 application without an evidentiary hearing because there was no genuine issue of material fact relevant to the claims of the petitioner. *See United States v. Green*, 882 F.2d. 999, 1008 (5th Cir. 1989); 28 U.S.C. § 2255(b). Section 2255(b) provides that an evidentiary hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.*

The district court had the benefit of the parties' submissions, numerous previously filed motions, evidentiary hearings, court orders, an affidavit from Davis's trial attorney, statements from two jurors, the extensive record including trial transcripts, and this Court's opinions on direct appeal. All of this provided an adequate factual basis necessary to make an informed decision on the application.

11

## **CONCLUSION**

For the foregoing reasons the government requests that this Court deny Len Davis's request for a COA.

Respectfully submitted,

PETER G. STRASSER
UNITED STATES ATTORNEY


/s/ *Tracey N. Knight*
TRACEY N. KNIGHT
Assistant United States Attorney
LA Bar Roll No. 23165
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3080
E-Mail: tracey.knight@usdoj.gov


/s/ *Diane Hollenshead Copes*
DIANE HOLLENSHEAD COPES
Assistant United States Attorney
LA Bar Roll No. 23456
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3029
E-Mail: diane.copes@usdoj.gov

### <u>CERTIFICATE OF SERVICE AND ECF COMPLIANCE</u>

I hereby certify that on this 31st day of December, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  The following ECF-registered counsel of record was served by Electronic Notice of Docket Activity:

Sarah Ottinger, sottinger1010@gmail.com

I further certify the foregoing document meets the required privacy redactions; that it is an exact copy of the paper document; and the document has been scanned with the most recent version of a commercial virus scanning program and is virus-free.

/s/ *Tracey N. Knight*
TRACEY N. KNIGHT

## **CERTIFICATE OF COMPLIANCE**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.     This document complies with the type-volume limitation of FED. R. APP. P. 27(d)(2) because:

   ☒      this document contains  2,598  words, excluding the parts of the document exempted by FED. R. APP. P. 32(f), or

   ☐      this document uses a monospaced typeface and contains _____ lines of text, excluding the parts of the document exempted by FED. R. APP. P. 32(f).

2.     This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

   ☒      this document has been prepared in a proportionally spaced typeface using Word 2010 in 14 point New Times Roman, or

   ☐      this document has been prepared in a monospaced typeface using _____[state name and version of word processing program ] with _____ [state number of characters per inch and name of type style].


/s/ *Tracey N. Knight*_____
TRACEY N. KNIGHT
Assistant U.S. Attorney
December 31, 2019